1 | Daniel S. Kahn                          Joseph H. Harrington
  | Acting Chief, Fraud Section             Acting United States Attorney
2 | U.S. Department of Justice              Eastern District of Washington
3 | Avi Perry                               Russell E. Smoot
  | Acting Principal Assistant Chief        Timothy M. Durkin
4 | John ("Fritz") Scanlon                  Brian M. Donovan
5 | Trial Attorney                          Assistant United States Attorneys
  | 1400 New York Avenue NW                 Post Office Box 1494
6 | Washington, DC 20005                    Spokane, WA 99210-1494
7 | Telephone: (202) 514-2000              Telephone: (509) 353-2767

8

9 |              UNITED STATES DISTRICT COURT
  |         FOR THE EASTERN DISTRICT OF WASHINGTON
10

11 | UNITED STATES OF AMERICA,          H:21-CR-06012-SAB-1

12 |                    Plaintiff,       Plea Agreement

13 |          v.

14 |
   | CODY ALLEN EASTERDAY,
15 |

16 |                    Defendant.

17

18        Plaintiff, the United States of America, by and through Daniel S. Kahn, Acting

19   Chief, Fraud Section, Criminal Division, United States Department of Justice, Avi

20   Perry, Acting Principal Assistant Chief, Fraud Section, Criminal Division, United

21   States Department of Justice, John ("Fritz") Scanlon, Trial Attorney, Fraud Section,

22   Criminal Division, United States Department of Justice, Joseph H. Harrington, Acting

23   United States Attorney for the Eastern District of Washington, and Russell E. Smoot,

24   Timothy M. Durkin, and Brian M. Donovan, Assistant United States Attorneys for

25   the Eastern District of Washington (collectively, "the United States"), and Defendant

26   **CODY ALLEN EASTERDAY** and Defendant's counsel, Carl J. Oreskovich, agree

27   to the following Plea Agreement:

28

Plea Agreement- 1

1.    <u>Waiver of Indictment, Guilty Plea and Maximum Statutory Penalties:</u>

Defendant understands that he has the right to have the facts of this case presented to a federal grand jury, consisting of between sixteen and twenty three citizens, twelve of whom would have to find probable cause to believe that he committed the offense set forth in Count One of the Information filed in the above-captioned matter, before an indictment could be returned.

Defendant acknowledges that he is waiving his right to be indicted and agrees to plead guilty to Count One of the Information charging Defendant with wire fraud, in violation of 18 U.S.C. § 1343. Defendant understands that the maximum statutory penalties for wire fraud, in violation of 18 U.S.C. § 1343, are not more than a 20-year term of imprisonment; not more than a 3-year term of supervised release; a fine not to exceed $250,000 or twice the gross gain or loss resulting from the offense, whichever is greatest, pursuant to 18 U.S.C. § 3571; the costs of prosecution; mandatory restitution, as set forth below; and a $100 special assessment.

Defendant understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment, *see* 18 U.S.C. § 3583(e), without credit for time previously served on post-release supervision.

2.    <u>The Court is Not a Party to the Agreement:</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Sentencing is a matter solely within the discretion of the Court. Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximum penalties stated in the Plea Agreement.

Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter. Defendant understands that the Court is required to consider the applicable sentencing

1  guideline range but may depart or vary upward or downward under the appropriate
2  circumstances.
3      Defendant also understands that should the sentencing judge decide not to
4  accept any of the parties' recommendations, that decision is not a basis for
5  withdrawing from this Plea Agreement, or a basis for withdrawing his plea of guilty.
6      3.    Waiver of Constitutional Rights:
7      Defendant understands that by entering his plea of guilty, Defendant is
8  knowingly and voluntarily waiving certain constitutional rights, including:
9          (a) The right to a jury trial;
10         (b) The right to see, hear, and question the witnesses;
11         (c) The right to remain silent at trial;
12         (d) The right to testify at trial; and
13         (e) The right to compel witnesses to testify.
14     While Defendant is waiving certain constitutional rights, Defendant understands
15  he retains the right to be assisted through the sentencing and any direct appeal of the
16  conviction and sentence by an attorney, who will be appointed at no cost if Defendant
17  cannot afford to hire an attorney.  Defendant also acknowledges that any pretrial
18  motions currently pending before the Court are waived.
19     4.    Elements of the Offense:
20     The parties agree that, in order to convict Defendant of wire fraud, in violation
21  of 18 U.S.C. § 1343, as charged in Count One of the Information, the United States
22  would need to prove beyond a reasonable doubt the following elements:
23         -  *First*, on or around the dates set forth in Count One, in the Eastern
24            District of Washington and elsewhere, Defendant **CODY ALLEN**
25            **EASTERDAY** knowingly devised and participated in a scheme and
26
27
28

Plea Agreement- 3

artifice to defraud Tyson Foods, Inc. ("Tyson")[1], another company ("Company 1"), and the CME Group, Inc. ("CME") to obtain money and property from Tyson and Company 1 by means of false and fraudulent pretenses, representations, promises, and omissions, as described in Count One;

- *Second,* the false and fraudulent pretenses, representations, promises, and omissions made by Defendant **CODY ALLEN EASTERDAY** as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, Tyson, Company 1, and the CME as described in Count One to part with money and property;

- *Third,* Defendant **CODY ALLEN EASTERDAY** acted with the intent to defraud, that is, the intent to deceive or cheat; and

- *Fourth,* Defendant **CODY ALLEN EASTERDAY** used, or caused to be used, an interstate wire communication as described in Count One to carry out or attempt to carry out an essential part of the scheme.

5.    Factual Basis and Statement of Facts:

Defendant **CODY ALLEN EASTERDAY** agrees to plead guilty because he is in fact guilty. Defendant certifies that he does hereby admit that the facts set forth below are true; that, were this case to go to trial, the United States would be able to prove these specific facts and others beyond a reasonable doubt; and that these facts constitute an adequate factual basis for **CODY ALLEN EASTERDAY**'s guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to sentencing, unless otherwise prohibited in this Plea Agreement.

---

[1] This Plea Agreement will use the term "Tyson" to refer to Tyson Foods, Inc., its subsidiaries including Tyson Fresh Meats, Inc., and agents and employees thereof, unless otherwise specified.

1       Between approximately 2016 and November 2020, in the Eastern District of
2 Washington and elsewhere, **CODY ALLEN EASTERDAY** knowingly, and with the
3 intent to defraud, devised and intended to devise a scheme and artifice to defraud
4 Tyson, Company 1, and the CME and to obtain money and property from Tyson and
5 Company 1 by means of materially false and fraudulent pretenses, representations,
6 promises, and omissions, knowing such pretenses, representations, promises, and
7 omissions were false and fraudulent when made, and did knowingly transmit and
8 cause to be transmitted by means of wire communications in interstate commerce
9 certain writings, signs, signals, pictures, and sounds for the purposes of executing
10 such scheme and artifice, in violation of 18 U.S.C. § 1343.

11       **CODY ALLEN EASTERDAY**, a citizen of the United States and resident of
12 Mesa, Washington, was the president and an owner of Easterday Ranches, Inc. from at
13 least 1998 through December 2020. Beginning in at least March of 2014 and
14 continuing through 2020, Easterday Ranches entered into a series of Cattle Feeding
15 Agreements with Tyson. **CODY ALLEN EASTERDAY** signed the Cattle Feeding
16 Agreements and one extension thereof on behalf of Easterday Ranches as the
17 company's president and owner.

18       Under the Cattle Feeding Agreements, Easterday Ranches agreed to procure
19 cattle on behalf of Tyson and provide feeding space for the cattle until they were sent
20 for slaughter at Tyson's plant located in Pasco, Washington. Easterday Ranches
21 agreed to provide Tyson supporting documentation regarding the procurement costs of
22 the cattle that Easterday Ranches proposed to purchase on behalf of Tyson. Upon
23 approval by Tyson, Easterday Ranches would purchase the cattle, and Tyson agreed to
24 reimburse Easterday Ranches for the purchase costs.

25       Also under the Cattle Feeding Agreements, Tyson agreed to reimburse
26 Easterday Ranches for the costs associated with growing the purchased cattle to
27 market weight. Easterday Ranches agreed to seek such reimbursement by billing
28

1   Tyson twice monthly.  Easterday Ranches agreed that the bills would accurately
2   reflect the costs associated with growing the cattle.
3           In addition to the Cattle Feeding Agreements between Easterday Ranches and
4   Tyson, and continuing until in or around September 2020, Easterday Ranches also
5   entered into a series of livestock bills of sale involving Company 1.  Through these
6   bills of sale, Easterday Ranches agreed to raise cattle on behalf of Company 1 until the
7   cattle were slaughter-ready, using purchase funds and prepaid feed costs advanced by
8   Company 1.  Easterday Ranches further agreed that, when the cattle ultimately were
9   sold for slaughter, Easterday Ranches would repay the advanced funds to Company 1
10  plus 4% interest.  Easterday Ranches would keep as profit (if any) the amount by
11  which the sale price at slaughter exceeded the costs it owed to Company 1.  If the sale
12  price at the time of slaughter was less than the amount Easterday Ranches owed to
13  Company 1, Easterday Ranches would suffer a loss.  **CODY ALLEN EASTERDAY**
14  signed each livestock bill of sale on behalf of Easterday Ranches.
15          Beginning in or around 2016 and continuing through November 2020, **CODY**
16  **ALLEN EASTERDAY** submitted and caused to be submitted to Tyson false and
17  fraudulent invoices and other information that sought reimbursement from Tyson for
18  cattle that were never actually purchased by or delivered to **CODY ALLEN**
19  **EASTERDAY** or Easterday Ranches and that did not actually exist.  In addition,
20  **CODY ALLEN EASTERDAY** submitted and caused to be submitted to Tyson false
21  and fraudulent invoices and other information that sought reimbursement from Tyson
22  for the purported costs of growing these nonexistent cattle.
23          The false and fraudulent invoices and other information that **CODY ALLEN**
24  **EASTERDAY** submitted and caused to be submitted to Tyson for these nonexistent
25  cattle caused Tyson to pay Easterday Ranches approximately $233,008,042 for the
26  purported costs of purchasing and growing cattle that were never actually purchased
27  by or delivered to **CODY ALLEN EASTERDAY** or Easterday Ranches and that did
28  not actually exist.

Plea Agreement- 6

1    For example, on or around March 22, 2019, **CODY ALLEN EASTERDAY**
2    caused Easterday Employee 1, an employee and agent of Easterday Ranches, to send
3    an email from Easterday Ranches' office in Pasco, Washington, to Tyson Employee 1,
4    a Tyson employee based in Dakota Dunes, South Dakota, entitled "NEW
5    PLACEMENTS." The email attached, among other things, an invoice from Easterday
6    Ranches to Tyson, which sought payment for seven lots of cattle. At least two of the
7    seven lots of cattle listed on the invoice were never actually purchased by or delivered
8    to **CODY ALLEN EASTERDAY** or Easterday Ranches and, in fact, did not exist.
9    The two nonexistent lots totaled 1,568 head of cattle. As a result of receiving this
10   false and fraudulent invoice, Tyson paid Easterday Ranches approximately
11   $1,482,826.41 for cattle that were never actually purchased by or delivered to **CODY
12   ALLEN EASTERDAY** or Easterday Ranches and that did not actually exist.
13          As another example, on or around May 7, 2020, **CODY ALLEN
14   EASTERDAY** caused Easterday Employee 1, an employee and agent of Easterday
15   Ranches, to send an email from Easterday Ranches' office in Pasco, Washington, to
16   Tyson Employee 1, a Tyson employee based in Dakota Dunes, South Dakota, entitled
17   "NEW PLACEMENTS." The email attached, among other things, two invoices from
18   Easterday Ranches to Tyson, which sought payment for eight lots of cattle. None of
19   the eight lots of cattle listed on the invoice was ever actually purchased by or
20   delivered to **CODY ALLEN EASTERDAY** or Easterday Ranches, and none of the
21   cattle actually existed. The eight nonexistent lots totaled 6,312 head of cattle. As a
22   result of receiving this false and fraudulent invoice, Tyson paid Easterday Ranches
23   approximately $5,314,326.11 for cattle that were never actually purchased by or
24   delivered to **CODY ALLEN EASTERDAY** or Easterday Ranches and that did not
25   actually exist.
26          In addition, on or around November 10, 2020, **CODY ALLEN EASTERDAY**
27   caused Easterday Employee 2, an employee and agent of Easterday Ranches, to send
28   an email from Easterday Ranches' office in Pasco, Washington, to Tyson Employee 1,

Plea Agreement- 7

1  a Tyson employee based in Dakota Dunes, South Dakota, entitled "EASTERDAY
2  RANCHES Inventory 11.07.2020." The email attached a Cattle Inventory Report
3  setting forth information about numerous lots of cattle that were purportedly
4  purchased by **CODY ALLEN EASTERDAY** or Easterday Ranches and that were in
5  Easterday Ranches' inventory. The total headcount of cattle listed in the Cattle
6  Inventory Report was approximately 296,535. Of that number, approximately
7  263,780 head of cattle were identified as having a "Loc" (location) of 99, which was
8  the internal designation in Easterday Ranches' books and records for cattle that –
9  unbeknownst to Tyson – had never actually been purchased by or delivered to CODY
10 EASTERDAY or Easterday Ranches and did not actually exist.
11         As of November 30, 2020, as a result of **CODY ALLEN EASTERDAY**'s
12 scheme to defraud, Easterday Ranches' books and records falsely reflected an
13 inventory of approximately 265,995 nonexistent cattle for which **CODY ALLEN**
14 **EASTERDAY** submitted and caused to be submitted to Tyson false and fraudulent
15 invoices and other information, and for which Tyson paid Easterday Ranches the cost
16 of purchasing and growing. **CODY ALLEN EASTERDAY**'s scheme to defraud
17 directly and proximately caused Tyson to suffer a loss of approximately
18 $233,008,042.
19         In addition, beginning in or around March 2020 and continuing through in or
20 around September 2020, **CODY ALLEN EASTERDAY** submitted and caused to be
21 submitted to Company 1 false and fraudulent bills of sale and invoices that sought
22 payment from Company 1 for the purported cost of purchasing and feeding cattle that
23 were never actually purchased by or delivered to **CODY ALLEN EASTERDAY** or
24 Easterday Ranches, and that did not actually exist.
25         In total, as a result of the false and fraudulent representations that **CODY**
26 **ALLEN EASTERDAY** made and caused to be made, Company 1 paid Easterday
27 Ranches approximately $11,023,090 for the purported costs of purchasing and raising
28

Plea Agreement- 8

thousands of cattle that were never actually purchased by or delivered to **CODY ALLEN EASTERDAY** or Easterday Ranches, and that did not actually exist.

**CODY ALLEN EASTERDAY** used a significant portion of the proceeds of the scheme to cover approximately $200 million in commodity futures contracts trading losses that **CODY ALLEN EASTERDAY** incurred on behalf of Easterday Ranches from in or around 2011 through in or around 2020.

In connection with his commodity futures trading, on or around October 17, 2017, and again on or around July 12, 2018, **CODY ALLEN EASTERDAY** caused Easterday Ranches to submit to the CME an Application to Exceed Position Limits that falsely inflated the number of cattle in Easterday Ranches' inventory at the time the application was submitted. Each of the applications was signed by **CODY ALLEN EASTERDAY** as the president of Easterday Ranches. These materially false and fraudulent applications were designed to permit Easterday Ranches to exceed position limits in live cattle futures contracts that the CME otherwise would have applied to Easterday Ranches.

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for **CODY ALLEN EASTERDAY**'s guilty plea to the charge against him. It does not include all of the facts known to **CODY ALLEN EASTERDAY** concerning criminal activity in he engaged. The statement is made knowingly and voluntarily and because **CODY ALLEN EASTERDAY** is in fact guilty of the crime charged.

6.    <u>The United States Agrees:</u>

       (a)    <u>Not to File Additional Charges:</u>

The Fraud Section, United States Department of Justice, Criminal Division and the United States Attorney's Office for the Eastern District of Washington agree not to bring any additional charges against Defendant based upon information in their possession at the time of this Plea Agreement arising out of Defendant's conduct

Plea Agreement- 9

1  charged in the Information, unless Defendant breaches this Plea Agreement any time
2  before sentencing.
3      7.      United States Sentencing Guideline Calculations:
4          Defendant understands and acknowledges that the United States Sentencing
5  Guidelines (hereinafter "USSG"), November 1, 2018 Manual, are applicable to this
6  case and that the Court will determine Defendant's applicable sentencing guideline
7  range at the time of sentencing. Pursuant to Rule 11(c)(1)(B), the United States and
8  Defendant recommend the following sentencing guidelines calculations. This
9  recommendation does not bind the Court.
10          (a)     Base Offense Level:
11          The parties agree and stipulate that Defendant's Base Offense Level is 7. *See*
12  USSG § 2B1.1(a)(1).
13          (b)     Specific Offense Characteristics:
14          The parties agree and stipulate that Defendant's Base Offense Level is
15  increased by 26 levels because the loss is greater than $150,000,000 but less than
16  $250,000,000. *See* USSG §2B1.1(b)(1)(N).
17          The parties agree and stipulate that Defendant's offense level is increased by 2
18  levels because the offense involved sophisticated means, and Defendant intentionally
19  engaged in or caused the conduct constituting sophisticated means. *See* USSG
20  §2B1.1(b)(10)(C).
21          The parties have no agreement whether any other specific offense
22  characteristics are applicable. The United States and Defendant may argue for or
23  against any adjustments and/or enhancements under the USSG noted in the
24  Presentence Investigation Report.
25          (c)     Acceptance of Responsibility:
26          If Defendant pleads guilty and demonstrates a recognition and an affirmative
27  acceptance of personal responsibility for the criminal conduct; provides complete and
28  accurate information during the sentencing process; does not commit any obstructive

Plea Agreement- 10

conduct; and accepts this Plea Agreement, the United States will move for a 3-level downward adjustment in the offense level for Defendant's timely acceptance of responsibility, pursuant to USSG §3E1.1(a), (b).

The parties agree that the United States may at its option and upon written notice to Defendant, not recommend a 3-level reduction for acceptance of responsibility if, before sentencing, Defendant is charged or convicted of any criminal offense whatsoever, or if Defendant tests positive for any controlled substance.

     (d)    Criminal History:

The parties make no agreement on Defendant's criminal history category, which shall be determined by the Court after the Presentence Investigative Report is completed.

    8.    Departure:

Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to USSG § 3B1.2 or a departure motion pursuant to USSG Chapter 5, except as provided for in Section 5K2.0. This shall not limit Defendant's ability to seek, or the United States' ability to oppose, a variance pursuant to 18 U.S.C. § 3553.

    9.    Incarceration:

The United States agrees to recommend a sentence of imprisonment within or below the adjusted sentencing range under the USSG as determined by the Court at the time of sentencing. Defendant is free to recommend any sentence he deems appropriate.

    10.    Criminal Fine:

The parties are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

    11.    Restitution:

The parties agree restitution is required pursuant to 18 U.S.C. §§ 3663A and 3664. With respect to restitution, the parties agree to the following:

Plea Agreement- 11

1                (a)   <u>Restitution Amount and Interest:</u>

2        The parties agree that the total restitution amount owed by Defendant is

3  approximately $244,031,132, and Defendant agrees to pay restitution in the following

4  amounts:

5        $233,008,042 to Tyson Foods, Inc.; and

6        $11,023,090 to Company 1.

7                (b)   <u>Payments:</u>

8        The parties agree the Court will set a payment schedule based on Defendant's

9  financial circumstances. *See* 18 U.S.C. § 3664(f)(2), (3)(A). That being said,

10  Defendant agrees to pay not less than 10% of his net monthly income towards his

11  restitution obligation.

12        Defendant also understands the United States may, notwithstanding the Court-

13  imposed payment schedule, pursue other avenues to ensure the restitution obligation is

14  satisfied, including, but not limited to, garnishment of available funds, wages, or

15  assets. *See* 18 U.S.C. §§ 3572, 3613, and 3664(m). Nothing in this acknowledgment

16  shall be construed to limit Defendant's ability to assert any specifically identified

17  exemptions as provided by law, except as set forth in this Plea Agreement.

18        Until a fine or restitution order is paid in full, Defendant agrees fully to disclose

19  all assets in which Defendant has any interest or over which Defendant exercises

20  control, directly or indirectly, including those held by a spouse, nominee or third

21  party. Defendant agrees to truthfully complete the Financial Disclosure Statement that

22  will be provided by the earlier of 30 days from Defendant's signature on this Plea

23  Agreement or the date of Defendant's entry of a guilty plea, sign it under penalty of

24  perjury and provide it to both the United States and the United States Probation

25  Office. Defendant expressly authorizes the United States to obtain a credit report on

26  Defendant upon the signing of this Plea Agreement. Until such time as the fine or

27  restitution order is paid in full, Defendant agrees to provide waivers, consents or

28

1  releases requested by the United States to access records to verify the financial

2  information.

3            (c)    Notifications:

4            Defendant agrees to notify the Court and the United States of any material

5  change in his economic circumstances (e.g., inheritances, monetary gifts, changed

6  employment, or income increases) that might affect his ability to pay restitution. *See*

7  18 U.S.C. § 3664(k). Further, Defendant agrees to notify the United States before

8  Defendant transfers any interest in property with a value exceeding $1,000 owned

9  directly or indirectly, individually or jointly, by Defendant, including any interest held

10  or owned under any name, including trusts, partnerships and corporations. This

11  obligation ceases when the restitution is paid-in-full.

12            Defendant agrees to notify the United States of any address change within 30

13  days of that change. *See* 18 U.S.C. § 3612(b)(F). This obligation ceases when the

14  restitution is paid-in-full.

15       12.    Forfeiture:

16            The parties agree forfeiture applies. *See* 18 U.S.C. § 981(a)(1)(C); 28 U.S.C.

17  § 2461(c). With respect to forfeiture, the parties agree to the following:

18            (a)    Forfeitable Property:

19            The United States shall seek a forfeiture money judgment in this matter and will

20  not seek to forfeit specific property, except as set forth in this Plea Agreement or

21  authorized by law. The United States will not seek to forfeit proceeds in an amount

22  exceeding what Defendant actually obtained as a result of the crime. *See Honeycutt v.*

23  *U.S.*, 137 S. Ct. 1626 (2017).

24            (b)    Money Judgment:

25            Defendant agrees to forfeit to the United States all right, title, and interest in the

26  following property: a money judgment, in an amount to be determined at or before

27  sentencing, which represents the amount of proceeds Defendant obtained as a result of

28  his illegal conduct.

(c)  Substitute Property:

Defendant understands the United States may seek for Defendant to forfeit substitute property in satisfaction of the money judgment if the United States can establish the following regarding the above-described property (*i.e.*, the money judgment): a) it cannot be located upon the exercise of due diligence; b) it has been transferred or sold to, or deposited with, a third party; c) it has been placed beyond the Court's jurisdiction; d) it has substantially diminished in value; e) it has been commingled with other property and cannot be divided without difficulty. *See* 18 U.S.C. § 982(b)(1); 21 U.S.C. § 853(p). The United States will not seek to forfeit substitute property from other defendants or co-conspirators; it may only forfeit substitute property from Defendant. *See* 21 U.S.C. § 853(p).

(d)  Application of Forfeited Property to Restitution:

Defendant understands the United States will seek restitution for the victim in this case independent of this money judgment. It is the parties' mutual understanding that the United States will seek approval to apply the proceeds of any forfeited assets to Defendant's restitution obligations. Defendant recognizes the final decision to approve this application rests with the Attorney General. *See* 18 U.S.C. § 981(d), (e); *see also* 28 C.F.R. § 9 *et. seq.*

(e)  Cooperation on Forfeited Assets:

Defendant agrees to cooperate with the United States in passing clear title on all forfeited assets. Defendant also agrees to assist the United States in locating any assets that 1) are the proceeds of illegal conduct (as outlined in this Plea Agreement) and 2) have not been dissipated. If such assets are located, then Defendant will stipulate to their forfeiture.

(f)  Waiver:

Defendant agrees to waive oral pronouncement of forfeiture at the time of sentencing. *See* Fed. R. Crim. P. 32.2(b)(4)(B).

Plea Agreement- 14

13.   <u>Supervised Release:</u>

The parties agree to recommend that the Court impose a 3-year term of supervised release. The parties are free to advocate for any special conditions they believe are appropriate.

14.   <u>Mandatory Special Assessment:</u>

Defendant agrees to pay the $100 mandatory special assessment to the Clerk of Court for the Eastern District of Washington on or before the date of sentencing. *See* 18 U.S.C. § 3013.

15.   <u>Payments While Incarcerated:</u>

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, then Defendant agrees to earn the money to pay toward these obligations by participating in Bureau of Prisons' Inmate Financial Responsibility Program.

16.   <u>Additional Violations of Law Can Void Plea Agreement:</u>

The parties agree that the United States may at its option and upon written notice to Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, before sentencing, Defendant is charged or convicted of any criminal offense whatsoever or if Defendant tests positive for unlawful use of any controlled substance.

17.   <u>Appeal Rights:</u>

Defendant understands that he has a limited right to appeal or challenge the conviction and sentence imposed by the Court. Defendant hereby expressly waives his right to appeal his guilty plea, conviction, sentence, fine and any restitution or forfeiture order imposed by the Court. Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence to include any restitution or forfeiture order, including a motion pursuant to 28 U.S.C. § 2255, except a motion based upon ineffective assistance of counsel based on information not now

1  known by Defendant and which, in the exercise of due diligence, could not be known
2  by Defendant by the time the Court imposes the sentence.

3      18.    Breach:

4      Defendant agrees that if he fails to comply with any of the provisions of this
5  Plea Agreement, including if he fails to tender such Plea Agreement to the Court,
6  makes false or misleading statements before the Court or to any agents of the United
7  States, commits any further crimes, or attempts to withdraw the plea (prior to or after
8  pleading guilty to the charge identified in Section 1 above), the United States will
9  have the right to characterize such conduct as a breach of this agreement.

10     In the event of such a breach: (a) the United States will be free from its
11  obligations under this Plea Agreement and further may take whatever position it
12  believes appropriate as to the sentence and the conditions of Defendant's release (for
13  example, should Defendant commit any conduct after the date of this Plea Agreement
14  that would form the basis for an increase in Defendant's offense level or justify an
15  upward departure – examples of which include but are not limited to, obstruction of
16  justice, failure to appear for a court proceeding, criminal conduct while pending
17  sentencing, and false statements to law enforcement agents, the probation officer, or
18  Court – the United States is free under this Plea Agreement to seek an increase in the
19  offense level based on that post-agreement conduct); (b) Defendant will not have the
20  right to withdraw the guilty plea; (c) Defendant shall be fully subject to criminal
21  prosecution for any other crimes which he has committed or might commit, if any,
22  including perjury and obstruction of justice; and (d) Defendant waives any protections
23  afforded by Section 1B1.8(a) of the Sentencing Guidelines, Rule 11 of the Federal
24  Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, and the
25  United States will be free to use against Defendant, directly and indirectly, in any
26  criminal or civil proceeding any of the information, statements, and materials
27  provided by him pursuant to this Plea Agreement, including offering into evidence or
28  otherwise using the Factual Basis and Statement of Facts set forth in Section 5 above.

Plea Agreement- 16

19.     <u>Waiver of Statute of Limitations:</u>

Defendant agrees that, should the conviction following Defendant's guilty plea be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement (including Count One of the Information to which Defendant is pleading guilty pursuant to this Plea Agreement) may be commenced or reinstated against Defendant, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement or reinstatement of such prosecution. Defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the Plea Agreement is signed.

20.     <u>Integration Clause:</u>

The parties acknowledge that this document constitutes the entire Plea Agreement between the parties, and no other promises, agreements, or conditions exist between the parties concerning this case's resolution. This Plea Agreement is binding only upon the Fraud Section, Criminal Division, United States Department of Justice, and cannot bind other federal, state, or local authorities. The parties agree that this Plea Agreement cannot be modified except in writing that is signed by the United States and Defendant.

//
//
//
//
//
//
//
//
//

Plea Agreement- 17

1     <u>Approval and Signature</u>

2     Agreed and submitted on behalf of the Fraud Section, United States Department of

3     Justice, Criminal Division.

4

5     Daniel S. Kahn
      Acting Chief, Fraud Section
6     U.S. Department of Justice, Criminal Division

7     Avi Perry
8     Acting Principal Assistant Chief, Fraud Section
      U.S. Department of Justice, Criminal Division
9

10

11    _____          $3/31/2021$
      John ("Fritz") Scanlon                     Date
12    Trial Attorney, Fraud Section
      U.S. Department of Justice, Criminal Division
13

14

15    Agreed and submitted on behalf of the United States Attorney's Office for the Eastern

16    District of Washington.

17

18    Joseph H. Harrington
19    Acting United States Attorney

20

21    _____          3 / 31 / 2021
      Russell E. Smoot                           Date
22    Assistant United States Attorney

23    Timothy M. Durkin
24    Asistant United States Attorney

25    Brian M. Donovan
26    Assistant United States Attorney

27

28

      Plea Agreement- 18

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreements with my attorney. I understand and voluntarily enter into the Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promise or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____          3/24/21
**CODY ALLEN EASTERDAY**                  Date

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's plea of guilty.

_____          3/25/21
Carl J. Oreskovich                        Date
Attorney for Defendant

Plea Agreement- 19