Carl J. Oreskovich, WSBA #12779
ETTER, M$^c$MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 West Riverside Avenue, Suite 210
Spokane, WA 99201
Phone: (509) 747-9100
Facsimile: (509) 623-1439
Email: carl@ettermcmahon.com
*Attorney for Defendant Cody A. Easterday*

CHIEF JUDGE STANLEY A. BASTIAN

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:21-CR-06012-SAB-1 |
| Plaintiff, | |
| | **DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE** |
| v. | |
| CODY ALLEN EASTERDAY, | **Sentencing Hearing:** |
| Defendant. | October 4, 2022 at 2:30 pm Yakima, WA |

COMES NOW, Defendant Cody A. Easterday, by and through his attorney of record, Carl J. Oreskovich of Etter, McMahon, Lamberson, Van Wert & Oreskovich, P.C., and hereby moves this Court for a Downward Variance and submits the following Sentencing Memorandum.

Defendant's Sentencing Memorandum and
Motion for Downward Variance- Page 1

ETTER, M$^c$MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

## **INTRODUCTION**

Before this Court for sentencing is a kind, humble man, treasured community member, friend, husband and father, who has been enormously successful in the agricultural and ranching industry. As described by family, friends, employees, business associates and community members, Cody's heart is enormous. He sponsors, and is involved in, nearly every community event, mentors entry level employees to successful managerial positions, assists undocumented workers obtain employment and citizenship, finances first home purchases for employees, and supports elderly employees who cannot work due to poor health. His efforts are tireless and good deeds are endless. Cody shares his success by earnest, endearing efforts to make others' lives more secure and their business more successful. His hand will grip any that is reaching for help.

Following high school graduation, Cody and his father Gale built an enormously successful agricultural and ranching business. As part of their business model, as a hedge against fluctuating market prices, Cody traded commodities futures. For many years, he traded in a conservative, successful manner.

During the last decade, Gale Easterday's health deteriorated, leading to a diagnosis of Parkinson's disease. As Gale withdrew from the business, Cody

Defendant's Sentencing Memorandum and
Motion for Downward Variance- Page 2

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

became more aggressive and speculative in his trading activity. He obtained an online platform with market change notifications sent directly to his phone. He became consumed by the market and distracted from the agricultural business that he loved. He became addicted to the gamble of the trade and over an approximate five-year period, sustained approximately two-hundred million dollars ($200,000,000) in losses. To meet his calls, Cody created and sent false cattle purchase invoices to Tyson foods and utilized the proceeds to meet his market calls. Notably, Cody kept a record of his fraudulent activity and in 2020 self disclosed his fraud to Tyson officials.

For approximately one week, Mr. Easterday met with Tyson officials in his Pasco office and provided records detailing his fraud. He immediately took responsibility and entered a guilty plea to Wire Fraud. Cody liquidated his assets and his companies went into bankruptcy, where he worked tirelessly to increase the estate value to maximize the recovery of the creditors. He has done all he can to make things rights. He now stands before this Court for sentencing.

## BACKGROUND

By way of background, Mr. Easterday was born in Othello, Washington in 1971 to Gale and Karen Easterday. (*See* ECF No. 26 at 11.) Mr. Easterday has four siblings—Jody Easterday, Kim English, Cindy Gouley, and Cully

Defendant's Sentencing Memorandum and
Motion for Downward Variance- Page 3

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201 (509) 747-9100

Easterday.  (*Id.*)  He met Debby Nuckolls in 1990 at a county fair and they were married in 1993.  (*Id.* at 12.)  The Easterdays have four children—Kody Dee Williams, Cole Easterday, Clay Easterday, and Cutter Easterday—ranging in age from 21 to 27.  (*Id.*)  Mr. Easterday has strong family ties.  (*See id.*)  In particular, prior to his father Gale's death, Mr. Easterday was "extremely close to his father," who was "not only his business partner, but also his mentor, confidant, and best friend."  (*Id.* at 12.)

In the third or fourth grade, Mr. Easterday began driving tractor on the family farm.  (ECF No. 26 at 12.)  He never viewed his farm chores as work, but rather enjoyed doing them.  Mr. Easterday graduated from Connell High School in 1989.  (*Id.* at 14.)  He did not attend college, but instead went straight into the farming business with his father.  (*Id.* at 14.)  After entering the farming industry, Mr. Easterday lived on a small house on the farm and worked long hours to expand the operations and grow the family business.  (*Id.*)  Shortly thereafter, Mr. Easterday became a partner in the Easterday Farms operations with his father Gale Easterday.  (*Id.*)

At twenty years old, Mr. Easterday was "responsible for overseeing all financial matters for the family business."  (ECF No. 26 at 14.)  Mr. Easterday helped build Easterday farms into a conglomerate of farming, cattle, and

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

produce operations and entities. (*Id.*) Mr. Easterday served as President of Easterday Farms based upon his "natural ability to manage individuals." (*Id.*) Mr. Easterday helped expand farming operations from 1,100 acres with four employees and approximately $1,000,000 in annual revenue to 22,000 acres with 150 employees and approximately $250,000,000 in annual revenue. (*Id.*)

Mr. Easterday worked tirelessly in support of his community, employees, business associates, and others. Mr. Easterday has donated his time and money to fairs, schools, sports, cookouts, serving food, buying kids' animals at 4H events, and quietly helping others routinely throughout his life. He has helped so many employees. He has consistently assisted undocumented workers obtain legal status, often times by paying their legal fees and offering employment. He will do anything to help his family, friends, and employees.

As articulated further in the attached letters and interviews contained in the sentencing video, his character and altruism has been summarized as:

- Martin Baile: Describes Mr. Easterday as an "honest, forthright, handshake kind of guy."

- C.D. Booker: Notes Mr. Easterday's "stellar character, known for truthful conduct and care for others."

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

- Robert Brandt: Indicates that "Cody built a culture of commitment and respect for one another- never seen such time, effort and expense expended to create a positive employee culture."

- Sarah Braun: Indicates that "Cody has an inherent kind and generous nature that has domino effects in the community."

- Jake Para: Provides that "in business and in life [Cody] is always looking for the right thing to do."

- Corey Conan: During hard times, Cody provided Mr. Conan a place to live on Easterday Farms, internally promoted him to management, and provided employment to his wife, father, and younger brother.

- Bertha Alvarez: Describes how Cody internally promoted her from a parts-runner to Easterday Farms' office despite no experience in an administrative role. Cody also assisted her in obtaining citizenship and purchasing a home.

- Juan Barrera: Former employee who Cody supported and paid for his health insurance after he was diagnosed with cancer.

Cody has also been a strong supporter of the rights of migrant farm workers and worked with Dr. Raul Garcia during his 2020 campaign for Governor of

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201  (509) 747-9100

Washington. These are just a sample of Mr. Easterday's community support, altruistic acts, and general character.

For many years, Mr. Easterday had successfully participated in futures trading for purposes of risk management against fluctuating crop and cattle prices. In December 2020, Mr. Easterday's father, business partner, and mentor Gale Easterday died in a car accident. (*See* ECF No. 26 at 11.) In the years preceding Gale Easterday's death, Gale suffered from Parkinson's disease and a general decline in health. (*Id*. at 12.) Although Mr. Easterday's commodity trading was originally disciplined, the combination of electronic platforms and the loss of oversight from his father allowed Mr. Easterday to spiral out-of-control. (*Id*.) Based upon his father's health, Mr. Easterday fell into a deep depression.

Mr. Easterday's fall from grace stems from high-risk commodities trading. In this vein, Mr. Easterday has been diagnosed with a "severe gambling disorder." (ECF No. 26 at 13.) Mr. Easterday's fraud started slowly to cover approximately $200,000,000 in commodity future contracts trading losses. (*Id*. at 7.) Mr. Easterday fully intended to repay the amount taken from Tyson, tracking the fraudulent cattle in "'Loc' (location) of 99, which was the internal

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201  (509) 747-9100

designation in Easterday Ranches' books and records." (ECF No. 10 at 8.)

According to the Presentence Investigation Report ("PSR") interview:

> Despite the inability to cover losses without fraud, the defendant stated he, at times, would experience positive trades which would make him feel confident he could turn around his fortune, which ultimately caused the defendant to continue trading and experience greater losses. The defendant stated he simply could not stop trading, and even started engaging in day trading. The defendant spoke about always having the belief that he could rectify the situation, a feeling that persisted even when he met with Tyson executives and told them of his conduct.

(ECF No. 26 at 7.) Mr. Easterday had a "winning bell" on his cell phone that sounded when he made a successful trade. (*Id*. at 12.) Prior to this case, Mr. Easterday "was unable to turn off his phone at night and was consumed with commodities trading." (*Id*.) To this day, Mr. Easterday "still has urges" and continues to feel exhilaration and angst on Monday morning when trading opens. (*See id*. at 8.)

In support of Defendant's Sentencing Memorandum and Motion for Downward Variance, Mr. Easterday submits reports from multiple mental health professionals. According to Alexander Patterson, Psy.D., Licensed Psychologist:

> Mr. Easterday's criminal actions were the direct product of a gambling disorder which developed out of a complex combination of personality and environmental factors. At baseline, his

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

personality is characterized by a high energy level, intense ambition, willingness to take risk, and propensity for boredom when not actively stimulated. . . . He also has some isolative tendencies, so to the extent he was aware of the personal weaknesses underlying his gambling disorder, he consistently hid them from family and friends, and minimize them even to himself through complex rationalizations. . . . Mr. Easterday experienced some winning trades that reinforced his behavior, and a pattern was established. As losses mounted, he found ways to justify his actions to himself such that he maintained confidence in his ability to "fix" the problem. . . . He would benefit from continued psychotherapy to help improve insight into aspects of his thinking patterns and interpersonal style that contributed to the gambling disorder.

(Patterson Report at pp. 17-18.) Similarly, Jon E. Grant, JD, MD, Professor of

Psychiatry at the University of Chicago, opines:

Mr. Easterday reports a pattern of behavior that involves commodities trading that meets criteria for gambling disorder of the past few years. "Gambling disorder" is the technical term for what most would refer to as gambling addition. Gambling disorder (i.e., addiction) is a severe psychiatric disorder. . . . Mr. Easterday reported possible alcohol addiction in his father which suggests a potential genetic vulnerability. Having said that, the cause is often unknown and likely multifactorial (i.e., genetic, developmental, psychological). . . . We do know that people with gambling disorder may develop the problem at any point in life. The fact that the trading went online and was therefore more easily accessed and more reinforcing (and intermittently so) may have also contributed to the overall rewarding/addictive nature of the behavior. . . . I recommended to Mr. Easterday to continue his counseling as that seems to be the best intervention to prevent future gambling behavior.

(Grant Report at p. 3.) Finally, Deena Mason, LMCH, NCC, M.Ed opines:

Defendant's Sentencing Memorandum and
Motion for Downward Variance- Page 9

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201  (509) 747-9100

He began trading futures which eventually became very intense as he grew obsessed with it. He had difficulty focusing on anything else as he continued to trade, especially when he began to experience large losses. This along with the loss of his father's help, his depression intensified, and he found himself in a desperate place. He found himself chasing the losses, and lying to himself that it would be okay to borrow from Tyson funds assuring himself he would pay them back.

(Mason Report at p. 2.) Mr. Easterday remains under the care of Ms. Mason.

Mr. Easterday's fraudulent conduct involved submitting false documentation to Tyson Foods, Inc. and "Company 1" for nonexistent cattle associated with Cattle Feeding Agreements. (*See* ECF No. 10 at 4-9; *accord* ECF No. 26 at 4-6.) Nevertheless, the scheme was not complicated and Mr. Easterday "used a significant portion of the proceeds" of the scheme to cover previous commodity futures trading losses. (ECF No. 10 at 9.) During a meeting with Tyson representatives on or about November 30, 2020, Mr. Easterday self-disclosed to Tyson that "the reported cattle he listed in inventory were 'not there.'" (ECF No. 26 at 7.) Thereafter, Mr. Easterday cooperated in audits conducted by Tyson, including "having an 'open book,' and assisting in the physical cattle inventory process." (*Id*. at 8.) Furthermore, on December 10, 2020, Mr. Easterday "travelled to Dakota Dunes, South Dakota," to meet with

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

Tyson and "laid out a plan to still feed cattle on Tyson's behalf, but apply any profits to the debts owed to Tyson for the previous fraud." (*Id.*)

On March 24, 2021, Mr. Easterday was charged via Information with one count of Wire Fraud, contrary to 18 U.S.C. § 1343. (ECF No. 1.) Almost immediately (March 31, 2021), Mr. Easterday pled guilty to the single count of Wire Fraud. (ECF No. 10; ECF No. 12.) Mr. Easterday is extremely remorseful that he was dishonest with Tyson and that his conduct has destroyed Easterday Farms, disappointed his family, and left employees without a job. Despite this, the Easterday Farms employees and Mr. Easterday's family remain supportive of him. (*See* ECF No. 26 at 14.) His employees stayed throughout the end of the bankruptcy because they wanted to support Cody.

Based upon Mr. Easterday's fraudulent conduct, the Easterday Farms property was "sold at auction as part of bankruptcy proceedings." (ECF No. 26 at 15.) However, based upon Mr. Easterday's continued work during the bankruptcy proceedings, he "has saved $50,000,000 in value versus simply walking away from the operation previously." (*Id*. at 15.) As indicated by Bankruptcy Judge Hold: "I think the Easterday family in particular has really stepped up during the course of the bankruptcy case. . . . I think the family, and not everyone would do this, owned up to what happened, took responsibility,

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

continued to be involved in the bankruptcy case in a way that enhanced the ultimate recovery to creditors." To date, Tyson has received $62,417,952 and Company 1 $3,492,798 in proceeds from the bankruptcy proceeding.

The PSR indicates Mr. Easterday's United States Sentencing Guideline ("USSG") Range is 121 to 151 months. (*See* ECF No. 26 at 16.) The major component of Mr. Easterday's USSG Total Offense Level is a 26 Level increase "as the loss exceeded $150,000,000, but was less than $250,000,000." (*Id*. at 9.) Mr. Easterday has agreed to restitution in the amount of $244,031,132. (*Id*. at 6.) For the reasons indicated herein, Mr. Easterday respectfully requests that the Court sentence him to three years of probation, including one year of electronic home detention.

## MEMORANDUM OF LAW

Title 18, Section 3553(a) directs that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Court shall consider the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court shall also consider the need for the sentence imposed:

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Pursuant to the "remedial regime" established in *United States v. Booker*, 543 U.S. 220 (2005), the "Guidelines are no longer mandatory but are only advisory." *United States v. Carty*, 520 F.3d 984, 990 (9th Cir. 2008). Nevertheless, the Guideline Range is still "'the starting point and the initial benchmark.'" *Carty*, 520 F.3d at 991 (quoting *Kimbrough v. United States*, 552 U.S. 85, 108 (2007)). However, the Court "may not presume that the Guidelines range is reasonable," and the factors contained in 18 U.S.C. § 3553(a) are the overarching guide in the Court's determination. *Carty*, 520 F.3d at 991; *United States v. Ruff*, 535 F.3d 999, 1003 (9th Cir. 2008); *United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008).

**A.** **The Offense Level Enhancement for Economic Loss Under USSG § 2B1.1 is Disproportionate and Unwarranted for Mr. Easterday.**

As indicated in the PSR, Mr. Easterday's Total Offense Level is 32 based upon a 26 Level increase for the amount of the loss pursuant to USSG §

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

2B1.1(b)(1). (*See* ECF No. 26 at 9-10.) Without the additional 26 Levels pursuant to USSG § 2B1.1, Mr. Easterday's USSG Range would be zero to six months as opposed to 121 to 151 months. (*See id.*) Based upon the flawed reasoning behind the loss enhancement under USSG § 2B1.1(b), the Court should exercise its discretion and disregard it in this matter.

USSG § 2B1.1(b) is predicated upon the flawed assumption that "loss serves as a measure of the seriousness of the offense and the defendant's relative culpability." USSG § 2B1.1, *Application Note*. The loss calculation enhancement has been criticized by various courts and commentators alike. Overall, the loss calculations "'have so run amok that they are patently absurd on their face' . . . due to the 'kind of piling-on of points for which the guidelines have frequently been criticized.'" *United States v. Parris*, 573 F. Supp. 2d 744, 745 (E.D.N.Y. 2008) (quoting *United States v. Adelson,* 441 F. Supp. 2d 506, 510, 515 (S.D.N.Y. 2006)).

The loss calculation enhancement does not focus on the actual harm caused to employees, shareholders, and the general public in white collar crimes. *See Parris*, 573 F. Supp. 2d at 746 (reasoning that criminal conduct "is simply not of the same character and magnitude as the securities-fraud prosecutions of those who have been responsible for wreaking unimaginable losses on major

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201    (509) 747-9100

corporations and, in particular, on their companies' employees and stockholders, many of whom lost their pensions and were financially ruined"); *accord* BOSS AND KAPP, 18 *Ohio St. J. Crim. L.* 605, 616 (2021) ("The reliance on loss as a proxy for seriousness of the offense is rooted in an assumption that larger loss frauds tend to be more sophisticated, affect a larger number of victims, result in greater illicit gains, and involve an abuse of one's position of power."). Similarly, the loss calculation enhancement leads to disproportionately higher sentences for white collar crimes than violent crimes. *See Parris*, 573 F. Supp. 2d at 752 (white collar crime range based upon loss enhancement was higher than average sentence for "murder . . . , manslaughter . . . , sexual abuse . . . , robbery . . . , drug trafficking . . . , firearms . . . , racketeering/extortion . . . , pornography/prostitution . . . , and general fraud"). Moreover, a defendant sentenced to a white collar crime still faces all of the consequences of a felony conviction despite the sentence imposed. *See May v. Shinn*, 37 F.4th 552, 556 n. 4 (9th Cir. 2022) (criminal justice system makes "it difficult for ex-felons to re-enter society by imposing an inordinate number of restrictions as 'collateral consequences'"); *accord Ruff*, 535 F.3d at 1004 ("probationers are subject to several standard conditions that substantially restrict their liberty").

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

As such, various other Federal Courts have disregarded the economic loss enhancement pursuant to USSG § 2B1.1(b) and focus on the factors articulated in 18 U.S.C. § 3553. *See Parris*, 573 F. Supp. 2d at 745 (sentencing white collar defendant "to a term of incarceration of 60 months in the face of an advsiory guidelines range of 360 to life); *United States v. Edwards*, 595 F.3d 1004, 1008 (9th Cir. 2010) (affirming sentence of five years probation for bankruptcy fraud implicating USSG Range of 27 to 33 months); *United States v. Johnson*, 2018 WL 1997975, at *4 (E.D.N.Y. 2018) ("Because the defendant's Guidelines sentence of 87-108 months is overwhelmingly due to the loss enhancement, and because I would find such a sentence well out of proportion to his appropriate sentence, I look closely at the § 3553 factors to guide the court to a reasonable sentence."); *United States v. Ranum*, 353 F. Supp. 2d 984, 990 (E.D. Wis. 2005) ("the guidelines treat a person who steals $100,000 to finance a lavish lifestyle the same as someone who steals the same amount to pay for an operation for a sick child"); *United States v. Emmenegger*, 329 F. Supp. 2d 416, 427 (S.D.N.Y. 2004) ("amount stolen is a relatively weak indicator of the moral seriousness of the offense or the need for deterrence"); *United States v. Watt*, 707 F. Supp. 2d 149, 155 (D. Mass. 2010) ("Loss under the Guidelines is effectively a proxy for evaluating culpability. Sometimes it is appropriate, and sometimes it is not.").

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

According to the Second Quarter 2022 sentencing statistics released by the United States Sentencing Commission ("USSC"), Federal Judges are imposing guideline sentences in fraud cases only 42.1% of the time. *See* *https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/quarterly-sentencing-updates/USSC_Quarter_Report_2nd_FY22.pdf*, Table 10. Further, the average (mean) sentence imposed in a fraud case was 15 months—62.3% below the USSG Range. *See id.*, Table 17. This statistic reflects sentences imposed without a recommendation for a USSG 5K1.1 departure. The USSG calculations overstate the seriousness of the offense when considering loss amounts in perspective and scale.

Here, the rationale behind the 26 Level increase pursuant to USSG § 2B1.1(b) is inapplicable. Mr. Easterday's fraud, although continuing over years, was not sophisticated. It utilized a simple invoice. Mr. Easterday did not commit fraud to finance a lavish lifestyle. Instead, he committed the fraud to cover commodity futures losses due to addiction. Mr. Easterday did not substantially profit from the fraud, but instead "used a significant portion of the proceeds of the scheme to cover approximately $200 million in commodity futures contracts trading losses incurred on behalf of Easterday Ranches." (ECF No. 26 at 6.) Furthermore, during this timeframe, Easterday Farms conducted

Defendant's Sentencing Memorandum and
Motion for Downward Variance- Page 17

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

approximately $2,000,000,000 worth of business with Tyson. Similarly, Mr. Easterday (individually) has agreed to restitution in the amount of $233,008,042 for Tyson and $11,023,090 for Company 1. (*See id.*) These losses were not incurred by shareholders, employees, or members of the general public, but rather sophisticated business entities. As the amount of the loss arbitrarily increases Mr. Easterday's Offense Level by 26, the Court should disregard USSG § 2B1.1(b) for the reasons indicated herein.

**B.** **The Individual Characteristics of Defendant and Application of Section 3553 Leads to a Sentence of Probation and Home Detention.**

As the operation of the USSG Range is not mandatory, the Court must base its sentencing decision upon the factors enumerated in 18 U.S.C. § 3553. The individual characteristics of Mr. Easterday and 3553 factors warrant a sentence of three years probation, including one year home confinement.

### *1. Individual Characteristics of Mr. Easterday.*

Pursuant to 18 U.S.C. § 3553(a)(1), the Court shall consider "the history and characteristics of the defendant." Here, the Court is sentencing an individual who has devoted his life to expanding a family business and helping countless employees, business associates, and members of the community over his life. Mr. Easterday has substantial community ties and family support. Mr.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

Easterday's multitude of altruistic actions range from giving employees unexpected opportunities for advancement, to housing for employees in need, to assisting migrant workers obtain citizenship, and supporting every community event or need financially and by his own labor. Mr. Easterday is extremely remorseful with his conduct having destroyed Easterday Farms and the associated impact.

This is not a case about greed. Mr. Easterday did not take the proceeds of the fraudulent conduct to live a lavish lifestyle. Rather, he is a humble man who dresses in a ball cap and jeans and who feels most comfortable working alongside his employees. The proceeds of the fraud were used to cover commodities futures losses incurred as part of a gambling addiction. As indicated above, Mr. Easterday maintained a separate account that accurately documented the amounts and details of the fraudulent transactions and voluntarily disclosed his fraud to Tyson. He spent weeks walking the Tyson officials and auditors through the records and detail of his fraud, went to Tyson with a plan to repay the loss, and has engaged in significant steps to repay the loss. He has worked tirelessly in the bankruptcy proceeding to maximize the recovery and payment to creditors.

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

The Court should consider Mr. Easterday's efforts to mitigate the harm, including his voluntary cessation, self-reporting, and diligent efforts to pay restitution and assist in the bankruptcy proceedings. Furthermore, Mr. Easterday has been living his own private punishment as he lives with the knowledge that he has brought shame to himself, his family, destroyed Easterday Ranches and Farms business, and left employees jobless. He acknowledges the substantial harm his fraud has caused Tyson. As succinctly stated by Mr. Easterday's treating mental health provider Deena Mason, LHMC:

> Cody admits he was very depressed and all he could think about was getting this mess fixed. . . . Cody feels devastated and is in disbelief that he jeopardized the thing he always sought to build and protect, which was his loved ones and the farm. . . . Cody's remorse has been extreme, from full on anguish, crying, and shame. He has difficulty not being extremely hard on himself, and has significant regret and self-condemnation. He is a person with genuine remorse, and deliberate determination to do things right for the rest of his life. He is very purposeful and sincere about everything he did wrong.

(Mason Report at p. 3.)

Pursuant to the individual history and characteristics of a defendant, the Court may also consider gambling addiction pursuant to 18 U.S.C. § 3553. *See United States v. Dikiara*, 50 F. Supp. 3d 1029, 1033 n.1 (E.D. Wis. 2014) (reasoning that USSG § 5H1.4 policy statement is "not binding on the court in

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

determining the sentence under § 3553(a)"). "[T]he American Psychiatric Association has reclassified pathological gambling from an impulse control disorder to an addiction-related disorder, and <u>numerous courts have recognized that gambling disorders may be a relevant factor to consider when imposing criminal sentences</u>." *Evans v. United States*, 2022 WL 612078, at *4 (E.D. Mich. Feb. 28, 2022) (collecting cases). In this vein:

> "[b]y physically hijacking the brain, [gambling] addiction diminishes the addict's capacity to evaluate and control his or her behaviors. Rather than rationally assessing the costs of their actions, addicts are prone to act impulsively, without accurately weighing future consequences."

*Evans*, 2022 WL 612078, at *4 (quoting *Dikiara*, 50 F. Supp. 3d at 1032) (alterations in *Evans*). The psychological nature of a gambling addiction is apparent when the proceeds of a crime are not used to fund a lavish lifestyle, but rather to continue a downward spiral of gambling losses. *See, e.g., Dikiara*, 50 F. Supp. 3d at 1032 ("Defendant did not act out of a desire to harm her employer, nor did she steal in order to finance a lavish lifestyle. Virtually all of the money went to the casino."). In such a scenario, the defendant commits a crime as a form of "chasing one's losses" to win enough to pay back stolen funds. *Id*. at 1032.

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201 (509) 747-9100

As such, gambling addiction may be sufficient grounds for a downward variance and/or consideration as a mitigating factor during sentencing. *See, e.g., Ruff*, 535 F.3d at 1001 (noting mitigating factors, including defendant's "gambling addiction" for which "he had participated in counseling for pathological gambling"); *United States v. Vieke*, 348 F.3d 811, 813 (9th Cir. 2003) (granting four-level downward departure based in part upon the "pathological nature of the [gambling] addiction"); *United States v. Sadolsky*, 234 F.3d 938, 943-44 (6th Cir. 2000) (downward departure warranted in computer fraud case based on defendant's gambling disorder); *Dikiara*, 50 F. Supp. 3d at 1033 ("Given the impact of [defendant's] gambling addiction, which was well-supported by the defense materials, a below range term sufficed to provide just punishment."); *United States v. Quinn*, 566 F. App'x 659, 671 (10th Cir. 2014) (considering gambling addiction in sentencing, but affirming district court's decision not to vary downward in tax evasion case); ALAN ELLIS, MARK H. ALLENBAUGH, ROBERT HUNTER, DOUGLAS C. CRAWFORD, *Gambling Addiction: Making the Case for Sentencing Relief*, Crim. Just. 12, 17 (2015) ("Gambling addiction is a volitional disorder. This disease sometimes makes otherwise law-abiding individuals commit crimes—e.g., fraud, theft, etc.—to support their habit, much like a heroin junkie steals to support a habit.").

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

In the situation at hand, Mr. Easterday has been clinically diagnosed with "a severe gambling disorder." (ECF No. 26 at 13.) As indicated by the opinions of Dr. Patterson and Dr. Grant, Mr. Easterday's criminal conduct was the result of a gambling disorder that can be controlled with continued treatment. (*See* Patterson Report at pp. 17-18; *accord* Grant Report at p. 3.) Moreover, Mr. Easterday remains under the care of Ms. Mason. Consistent with this diagnosis, Mr. Easterday did not substantially profit from his fraud, but rather was attempting to recoup multimillion dollar losses in prior commodities trades. The Court has discretion to consider Mr. Easterday's gambling disorder under 18 U.S.C. § 3553. *See Dikiara*, 50 F. Supp. 3d at 1033; *Ruff*, 535 F.3d at 1001.

A sentence of three years probation, including one year of home detention, is warranted based upon the individual characteristics of Mr. Easterday. *See* 18 U.S.C. § 3553(a)(1). Moreover, a sentence not including prison confinement will allow Mr. Easterday to continue his psychological treatment for his gambling disorder. *See* 18 U.S.C. § 3553(a)(2)(D).

### 2. Seriousness of the Offense, Respect for the Law, and Just Punishment.

Pursuant to 18 U.S.C. § 3553(a)(2)(A), the Court must consider the need of the sentence "to reflect the seriousness of the offense, to promote respect for the

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201 (509) 747-9100

law, and to provide just punishment for the offense."  At its core, the offense conduct is the creation and use of false invoices to obtain funds to cover commodities futures trading losses sustained as a result of a gambling disorder best described as a severe psychiatric disorder.  Although continuing over several years, the scheme was neither complicated nor concealed.

The economic loss standing alone is enormous, but not so when considered in the context of the amount of business that was transacted during the same time period.  As indicated above, the economic loss enhancement of USSG § 2B1.1(b) is unsubstantiated by policy purposes and should not be applied to Mr. Easterday's crime.  Mr. Easterday did not personally profit from his fraudulent conduct and the victims are sophisticated business entities.  Similarly, Mr. Easterday has agreed to substantial restitution and will bear the consequences of a felony conviction and supervised release with the proposed sentence.  His offense occurs because of addiction in the context of a life marked by hard work, honesty, and the unequivocal support and care for his friends, employees, and community.  Respect for the law does not arise because of harsh sentences. Respect for the law occurs when the Court fashions a sentence that is just considering all of the facts of the case.  As such, a sentence of supervised release

Defendant's Sentencing Memorandum and
Motion for Downward Variance- Page 24

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

and home detention is a just punishment based upon the seriousness of the offense and to promote respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A).

### 3. *Specific and General Deterrence of Future Criminal Conduct.*

Pursuant to 18 U.S.C. § 3553(a)(2)(B), the Court must consider the need of the sentence "to afford adequate deterrence to criminal conduct." However, deterrence does not require a period of incarceration. *See United States v. Edwards*, 595 F.3d 1004, 1016 (9th Cir. 2010) (law "does not require the goal of general deterrence be met through a period of incarceration"). As it relates to specific deterrence, Mr. Easterday is well-aware that his conduct has destroyed Easterday Farms and he must now attempt to restart his life in his 50s. For general deterrence, Mr. Easterday bears the consequences of a felony conviction, substantial restitution, and a highly public criminal matter. A sentence of supervised release and home detention would provide adequate deterrence based upon Mr. Easterday's felony conviction and life altering implications of his criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(B).

### 4. *Protection of the Public.*

Pursuant to 18 U.S.C. § 3553(a)(2)(C), the Court must consider the need of the sentence "to protect the public from further crimes of the defendant." Based upon Mr. Easterday's felony conviction, Easterday Farms is in bankruptcy, he

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201 (509) 747-9100

will be barred from commodities trading, and he will likely never be in another management position. Furthermore, both Dr. Patterson and Dr. Grant have opined that Mr. Easterday is a low risk of recidivism based upon the nature of the offense, his gambling addiction, and his personal characteristics. He remains under the care of Deena Mason, LHMC.

Cody has no criminal history. He has engaged in intensive counseling to address his gambling addiction. Conversely, he has all of the factors that decrease risk, such as a strong support system, marketable skills, and motivation to change. Cody's support system is very strong and committed to helping him maintain his life without trading or gambling. All of Cody's children have noted the shame and disappointment their father feels in himself and the regret he has hurt others, a concept so against his personality. They also see his relief from having finally come forward about his addiction and his admonition that he violated the law. The family will support him through any period of incarceration, treatment, and rehabilitation.

Finally, Mr. Easterday has accepted responsibility like no others. He has tirelessly worked to repay his debt. He has lost everything that he has built and lives daily with the shame of his fraudulent conduct. Mr. Easterday will pick himself up and work to restart his life. He will not engage in further conduct to

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201  (509) 747-9100

destroy it.  As such, a sentence of supervised release and home detention is adequate to protect the public from potential future crimes based upon Mr. Easterday's low risk of recidivism.  *See* 18 U.S.C. § 3553(a)(2)(C).

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Easterday respectfully requests that the Court order a variance from the USSG Range and sentence him to three years probation, including one year home detention.

RESPECTFULLY SUBMITTED this 19th day of September, 2022.

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.


By:    /s/ Carl J. Oreskovich
Carl J. Oreskovich, WSBA #12779
Attorney for Defendant Cody Easterday

ETTER, MᶜMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of September, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all of the attorneys that have appeared in this case and have registered with the CM/ECF System.

EXECUTED this 19th day of September 2022 in Spokane, WA.


By:  ___/s/ Jodi Dineen_____
Jodi Dineen

ETTER, M<sup>c</sup>MAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100