Carl J. Oreskovich, WSBA #12779
ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 West Riverside Avenue, Suite 210
Spokane, WA 99201
Phone: (509) 747-9100
Facsimile: (509) 623-1439
Email: carl@ettermcmahon.com
*Attorney for Defendant Cody A. Easterday*

CHIEF JUDGE STANLEY A. BASTIAN

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CODY ALLEN EASTERDAY,<br><br>Defendant. | No. 4:21-CR-06012-SAB-1<br><br>**DECLARATION OF CARL J. ORESKOVICH IN SUPPORT OF DEFENDANT'S MOTION TO CONTINUE RESTITUTION DETERMINATION** |

I, Carl J. Oreskovich, do hereby declare the foregoing is true and correct under penalty of perjury to the best of my knowledge:

1. I am over the age of eighteen and competent to testify regarding the matters stated herein.

Declaration of Carl J. Oreskovich— Page 1

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201 (509) 747-9100

2. I am the attorney of record for the Defendant, Cody Easterday. I make this Declaration in Support of Defendant's Motion to Continue Restitution Determination.

3. As indicated fully in the accompanying Motion, the purpose of Defendant's Motion to Continue Restitution Determination is for consideration of three outstanding restitution offset issues, along with others as may be further established.

4. Recently in the Easterday Ranches, Inc. ("Easterday Ranches") Bankruptcy, Tyson Fresh Meats, Inc. ("Tyson") received a distribution of approximately $62,417,952.00 and Segale received a distribution of approximately $3,492,780.00. It is further my understanding that approximately $8,750,000.00 to $9,000,000.00 in additional payments to be made by various Easterday family members and entitles under the Confirmed Bankruptcy Plan will be contributed to Tyson and/or Segale in the future once received by the Plan Administrator as they come due.

5. The first outstanding restitution issue relates to unpaid feed amounts due from Tyson to Easterday Ranches. These amounts were incurred both prior to the Bankruptcy and post-Bankruptcy. In essence, Easterday Ranches provided feed and cattle care services for cattle owned by

Tyson. However, Tyson failed to pay Easterday Ranches approximately $11,970,095.18 associated with these services.

   a. This number is comprised of pre-petition feed and care costs of approximately $9,452,439.65 and post-petition feed and care costs of approximately $2,517,655.53.

   b. The pre-petition feed was not disputed as it was reported on Easterday Ranches' monthly operating reports as a receivable throughout the Bankruptcy proceedings and never objected to by any party, but was never paid by Tyson.

   c. The post-petition feed was never recorded as a receivable by Easterday Ranches, but were accrued through February 15, 2021, prior to the settlement with Tyson. The details and reconciliation for feed amounts owed prior to the settlement have never been made available by Tyson.

6. Second, there is a significant issue with respect to money that Tyson illegally collected from Easterday Ranches from approximately 2010 through November 2020 in violation of provisions of the Packers and Stockyards Act of 1921.

a. Notably, Tyson has maintained that it owned the cattle that were purchased and fed by Easterday Ranches. Attached hereto as **Exhibit A** is the Confirmation of Ownership Agreement. Attached hereto as **Exhibit B** is the Cattle Feeding Agreement between Tyson and Easterday.

b. Tyson treated the agreements as if Easterday had owned the cattle and collected over $51,000,000.00 in interest and guaranteed profits during this time frame, when in fact Tyson was not entitled to said funds. If Tyson owned the cattle as is represented by the two above-referenced Agreements, Tyson was not entitled to interest and guaranteed profits.

c. Federal Regulations implemented under the Packers and Stockyards Act of 1921 indicate: "No packer or dealer [*i.e.*, Tyson] shall, in connection with the purchase of livestock in commerce, <u>charge, demand, or collect</u> from the seller of the livestock [*i.e.*, Easterday Ranches] <u>any compensation in the form of commission, yardage, or other service charge</u> unless the charge is for services mandated by law or statute and is not inconsistent with the provisions of the Act." 9 C.F.R. § 201.98.

Declaration of Carl J. Oreskovich— Page 4

d. The following table provides a summary of prohibited compensation amounts collected by Tyson from Easterday Ranches, as reported in Tyson's own settlement sheets:

**PROHIBITED SERVICE CHARGES COLLECTED BY TYSON**

| Year | Interest | Guaranteed Profit | Total Service Charges |
|---|---|---|---|
| 2010 | 393 | 337 | 729 |
| 2011 | 1,609 | 1,151 | 2,760 |
| 2012 | 2,090 | 1,215 | 3,306 |
| 2013 | 2,323 | 1,268 | 3,592 |
| 2014 | 2,284 | 1,185 | 3,469 |
| 2015 | 4,067 | 1,492 | 5,559 |
| 2016 | 3,584 | 1,355 | 4,939 |
| 2017 | 3,454 | 1,350 | 4,804 |
| 2018 | 4,984 | 1,443 | 6,426 |
| 2019 | 8,877 | - | 8,877 |
| 2020 | 6,573 | - | 6,573 |
| | 40,238 | 10,797 | 51,034 |

7. Third and finally, Tyson owes Mr. Easterday compensation for the use of his name and likeness in marketing ventures.

   a. In this vein, Tyson marketed beef to Nipponham Group (now NH Foods Group) under the label "Cody's Beef" for at least seven years, and up to eleven years, without sharing in the profits or paying Mr. Easterday for the use of his name and likeness. Attached hereto as **Exhibit C** is Tyson's marketing material

utilizing Mr. Easterday's name and likeness, along with the associated trademark.

b. Specifically, "Cody's Beef" was a branded beef program and had certain contract specifications and requirements. The contract specifications for Cody's Beef required delivery of high-quality cattle that would have met or exceeded the requirements for Tyson's Chairman Reserve branded beef products.

c. The agreement between Mr. Easterday and Tyson was that if the marketing venture was profitable, Tyson would share profit with Mr. Easterday. As the brand and label were used by Tyson for at least seven years and Tyson has retained and maintained the trademark, it obviously had substantial value to Tyson.

d. Mr. Easterday and/or Easterday Ranches have never been provided with any reconciliation of the monies that were received, the profits that Tyson records, or any amount due to Mr. Easterday. Rather, Tyson has solely retained all profits arising out of this marketing arrangement.

e. The amount of benefit wrongfully retained by Tyson is estimated as upwards of $100,000,000.00. This number is based upon

Tyson receiving approximately 45,000 to 50,000 head of cattle per year under the program and the estimated premium value per head using United States Department of Agriculture ("USDA") data as a proxy.

8. The defense's position is that the Court should consider the three above-identified issues, along with others as may be further established, as potential offset(s) against the remaining amount of restitution in this case owed by Mr. Easterday. As such, Mr. Easterday is requesting a continuance of the restitution portion of the sentencing hearing so the parties may evaluate these potential offsets, potentially obtain associated discovery, and provide the Court detailed legal analysis and briefing regarding the potential restitution offsets.

9. On September 19, 2022, I sent a letter to Brian M. Donovan and John (Fritz) Scanlon, attorneys for the Government, outlining these restitution issues and inquiring about the Government's position regarding a continuance of the restitution portion of the upcoming sentencing hearing. Attached hereto as **Exhibit D** is a true and correct copy of this correspondence.

ETTER, McMAHON, LAMBERSON, VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

10. Mr. Donovan, on behalf of the Government, responded that "we will dutifully apply any future credits or offsets as directed by the Court." Further, Mr. Donovan indicated the Government would only object to a continuance "to the extent it delays Cody's reporting to BOP custody. Otherwise, we take no position on whether an additional hearing is necessary/warranted." Attached hereto as **Exhibit E** is a true and correct copy of this email correspondence.

11. This Motion is made in good faith and not for the purpose of hindering or delaying this matter.

I declare the foregoing is true and correct under penalty of perjury of the laws of the State of Washington and the United States.

EXECUTED this 26th day of September, 2022 in Spokane, WA.


By: /s/ Carl J. Oreskovich
     Carl J. Oreskovich

Declaration of Carl J. Oreskovich— Page 8

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201   (509) 747-9100

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of September, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all of the attorneys that have appeared in this case and have registered with the CM/ECF System.

EXECUTED this 26th day of September, 2022 in Spokane, WA.


By: /s/ Carl J. Oreskovich
Carl J. Oreskovich

Declaration of Carl J. Oreskovich— Page 9

ETTER, McMAHON, LAMBERSON,
VAN WERT & ORESKOVICH, P.C.
618 WEST RIVERSIDE AVENUE, SUITE 210
SPOKANE, WASHINGTON 99201  (509) 747-9100