# EXHIBIT A

## Global Settlement Term Sheet

See attached.

**EXECUTION COPY**

**IN RE EASTERDAY RANCHES, INC. AND EASTERDAY FARMS**

**Global Settlement Term Sheet**

**April 14, 2022**

This term sheet ("Term Sheet") sets forth the principal terms and condition of a global settlement by and among (a) Easterday Ranches, Inc. and Easterday Farms (together, the "Debtors"), (b) Cody and Debby Easterday, (c) Karen Easterday, individually and as personal representative of the probate estate of Gale A. Easterday (together with Cody and Debby Easterday, the "Easterday Family"), (d) 3E Properties, Easterday Farms Produce, Co., (e) Easterday Dairy, LLC (f) the Official Committee of Unsecured Creditors of Easterday Ranches, Inc. (the "Ranches Committee"), (g) the Official Committee of Unsecured Creditors of Easterday Farms (the "Farms Committee"), (h) Tyson Fresh Meats, Inc. ("Tyson"), and (i) Segale Properties, LLC ("Segale") (each a "Party" and together the "Parties").

This Term Sheet is proffered in the nature of a settlement and nothing herein shall be deemed to be an admission or evidence of any fact. Except as otherwise expressly provided in this Term Sheet, nothing herein is intended to, or does, in any manner waive, limit, impair, or restrict the ability of any party to protect and preserve any of its respective rights, remedies and interests, including without limitation its respective claims against the other or its ability to participate in any proceeding.

The transactions contemplated by this Term Sheet are subject to terms and conditions to be set forth in definitive documents and subject to approval by the United States Bankruptcy Court for the Eastern District of Washington, Yakima Division (the "Bankruptcy Court"). The Debtors will seek the entry of an order approving this Term Sheet (the "Term Sheet Order") in form and substance reasonably acceptable to the Parties on an expedited basis. The settlement described herein shall be effective upon the effective date of a plan of liquidation that conforms to the terms hereof (the "Plan").

| **Global Settlement Term Sheet** | |
|---|---|
| **Term** | **Description** |
| ***FRI Sale Properties / Proceeds*** | Easterday Family shall release any and all interests in the Net Sale Proceeds Account (~$96 million) (other than the Karen Settlement Amount described below). |
| ***Karen Easterday Settlement Amount*** | Upon the Effective Date of the Plan, and in satisfaction of Karen Easterday's claims asserted in connection with the Allocation Complaint (*i.e.*, assertion of ownership of certain parcels of property sold to FRI), Farms will pay **$6 million** to Karen Easterday (the "Karen Settlement Amount"), subject to the simultaneous reduction for first the Basin City Cash Purchase Price ($4.2M), then the Idaho Contribution ($669,300), and finally to application of the Easterday Dairy, LLC Note and BC 140, LLC Secured Guaranty (each defined and discussed below) (*i.e.*, remaining $1,130,700 of Karen Settlement Amount to be applied to Easterday Dairy, LLC Note and BC 140, LLC Secured Guaranty).<br><br>For the avoidance of doubt, the net payment from Farms to Karen on account of the Karen Settlement Amount, after adjustment, will be $0 as a result of the Basin City Cash Purchase Price, Idaho Contribution and Easterday Dairy, LLC Note and BC 140, LLC Secured Guaranty provisions below. |
| ***Karen Easterday Secured Note*** | Karen Easterday will deliver on the Effective Date of the Plan a secured promissory note to the Debtors in the amount of **$5 million** (the "Karen Secured Note").<br><br>Interest: 3% simple interest paid at maturity. |

| Global Settlement Term Sheet | |
|---|---|
| **Term** | **Description** |
| | Maturity Date: 2-years after the Effective Date of the Plan.<br><br>Security: First deed of trust or mortgage on Karen Easterday's Franklin County home and surrounding parcels (approximately 800 acres). |
| ***Idaho Contribution*** | Idaho appraised value: $9,231,000<br><br>Baseline Value: $7,000,000<br><br>Karen Easterday will provide, on the Effective Date of the Plan, an additional payment to the Debtors equal to $669,300, which represents 30% of the difference between the Appraised Value and the Baseline Value (the "Idaho Contribution").<br><br>The Idaho Contribution shall be paid from the Karen Settlement Amount on the Effective Date of the Plan. |
| ***Basin City Sale*** | Upon the Effective Date of the Plan, Cody and Debby Easterday shall sell their interests in Franklin County APNs 121-310-054, 121-320-044, and 125-230-080 (the "Basin City Properties") to Karen Easterday's newly formed LLC, BC 140, LLC ("BC 140, LLC"), for **$4.2M** of cash (the "Basin City Cash Purchase Price") plus assumption of the AXA Equitable Life Insurance Company loan (~$1.2M), subject to consent of AXA Equitable Life Insurance Company.<br><br>The Basin City Cash Purchase Price will be funded from the Karen Settlement Amount. Simultaneously at the closing, Cody and Debby Easterday shall contribute the Basin City Cash Purchase Price to the Debtors. As a result, there will be no actual transfer of funds. For the avoidance of doubt, the Basin City Cash Purchase Price will reduce the Karen Settlement Amount to $1.8M ($6.0M - $4.2M). |
| ***Easterday Dairy, LLC Note and BC 140, LLC Secured Guaranty*** | In full satisfaction of the outstanding note receivable owed by Easterday Dairy, LLC to Easterday Farms, on the Effective Date of the Plan, Easterday Dairy, LLC shall provide the Liquidation Trust with a **$2,169,300** (*i.e.*, **$3,300,000 - $1,130,700)** stand-alone promissory note with 3% interest (the "Easterday Dairy, LLC Note"). For the avoidance of doubt, this amount represents the final amount, after deducting the remaining balance of the Karen Settlement Amount.<br><br>The Easterday Dairy, LLC Note shall be guaranteed by BC 140, LLC, which guaranty shall be secured by (a) a first deed of trust or mortgage on the unencumbered parcels of the Basin City Properties (APNs: 121-310-054 and 121-320-044 aka FU 140 and FU 228, blk 20) and (b) a junior deed of trust or mortgage subordinate to AXA Equitable Life Insurance Company's prior lien and mortgage on APN 125-230-080 aka portions of Farm Units 103 and 104, Block 20 ("BC 140, LLC Guaranty and Collateral Pledge"), subject to consent from AXA Equitable Life Insurance Company; *provided*, *however*, to the extent AXA Equitable Life Insurance Company does not consent to a junior deed of trust or mortgage on APN 125-230-080, then Karen Easterday shall pledge 100% of the membership interest in BC 140, LLC as an alternative to such junior deed of trust or mortgage subject to consent from AXA Equitable Life Insurance Company. The deed of trust or mortgage shall include a due on sale clause. The Easterday Dairy, LLC Note and BC 140, LLC Guaranty and |

| Global Settlement Term Sheet | |
|---|---|
| **Term** | **Description** |
| | Collateral Pledge shall not be cross-defaulted or cross-collateralized with the Karen Secured Note.<br><br>Payment Due: $2,169,300 (principal) plus accrued interest shall be due and payable 2-years from the Effective Date of the Plan. |
| ***Transfer of Steer Head Brand*** | The Debtors shall transfer all rights, interests, and ownership in the "steer head" brand (image below) to Karen Easterday or her designee. All fees and expenses related to such transfer shall be borne solely by Karen Easterday or her designee. |
| ***Assignment of Claims Against Canyon Farm*** | Debtors agree to assign all estate claims against Canyon Farm, LLC / Fall Line Capital to Karen Easterday or her designee. |
| ***3E and Easterday Produce Contribution*** | 3E and Easterday Farms Produce, Co. shall buy back Cody and Debby Easterday's interest in 3E and Easterday Farms Produce, Co. for $2,274,210 (the "3E-Produce Purchase Price").<br><br>The 3E-Produce Purchase Price shall be in the form of a secured note from 3E and Easterday Farms Produce, Co. (joint obligors) at 4.5% interest; $100,000 due and payable every 6-months with the first payment due 90 days after the Effective Date of the Plan (to be applied to principal), with the balance due 2-years from the Effective Date of the Plan (the "3E-Produce Secured Note").<br><br>At the closing, Cody and Debby shall assign their rights in the 3E-Produce Secured Note to the Liquidation Trust.<br><br>The 3E-Produce Secured Note shall be secured by a pledge of 33% interest in 3E and Easterday Farms Produce, Co. |
| ***Criminal Proceedings*** | The Debtors agree not to appear, file, or otherwise make any statements in connection with Cody Easterday's sentencing. |
| ***DOJ Consent*** | The Debtors, Tyson, and Segale will cooperate with Cody and Debby Easterday to get the DOJ to consent to the settlements and releases of properties and interests included in this |

| Global Settlement Term Sheet | |
|---|---|
| **Term** | **Description** |
| | Term Sheet and the Plan. DOJ's consent is a condition of the settlement and a condition precedent to the Effective Date of the Plan. |
| ***Release of Claims Against the Debtors*** | Easterday Family and each of their affiliates (*e.g.*, Easterday Dairy), agents, and representatives shall waive all claims (prepetition and postpetition) against the Debtors and each of their former and current agents, professionals, officers (including Paladin Management Group, Peter Richter, and Scott Avila), directors, and employees, including, but not limited to any claims of substantial contribution that may be assertable by their agents and representatives.<br><br>Upon the Effective Date of the Plan, all proofs of claim filed by the Easterday Family and each of their affiliates shall be deemed withdrawn with prejudice.<br><br>Notwithstanding the foregoing, Weyns Farms and its related entities are not required to release the Debtors. |
| ***Exculpation*** | The Plan shall provide that the Exculpated Parties shall not have or incur, and are released from, any claim, obligation, cause of action, and/or liability, in each case that arise from facts or circumstances that took place in whole or in part between the Petition Date and the Effective Date of the Plan, to any holder of a claim, interest, or any other entity or any of their respective successors, assigns or representatives for any act or omission with respect to or arising out of the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence, fraud or willful misconduct or any obligations that they have under or in connection with the Plan, the Plan Documents, or any transactions contemplated thereby, and in all respects shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.<br><br>"Exculpated Parties" shall mean each of (i) the Debtors, and any of their respective successors or assigns, and any of their Representatives, including, for the avoidance of doubt, Pachulski Stang Ziehl & Jones LLP, Paladin Management Group, Peter Richter, Scott Avila, R. Todd Neilson, Craig Barbarosh, Thomas Saunders V, Eric Bonnett, Clyde Hamstreet, Hamstreet & Associates, Mark Calvert, Matt McKinlay, and Stephen Benson; (ii) the Committees, their members and any of their respective Representatives; (iii) Tyson and any of its respective Representatives; (iv) Segale and any of its respective Representatives, and (v) the Easterday Family, and any of their respective Representatives, including, for the avoidance of doubt, Sussman Shank LLP, Tonkon Torp LLP, Jordan Ramis PC, Widner Consulting, LLC, and Lindy Widner.<br><br>"Representatives" shall mean with respect to any entity, the present and former directors, officers, members, managers, employees, trustees, accountants (including independent certified public accountants), advisors, attorneys, consultants, experts or other agents of that entity, or any other professionals of that entity, in each case in their capacity as such. |
| ***Release of Claims Against the Easterday Family*** | Easterday Family, all related family members, entities in which the Easterday Family or their related family members own an interest (other than Weyns Farms and its related entities), and their affiliates, agents, professionals, officers and directors and Representatives shall be released of all claims from the Farms Estate, the Ranches Estate, and each creditor of each estate to the extent allowed by law; *provided*, *however*, to the extent any member of the Easterday Family or any such party affiliated with the Easterday |

| Global Settlement Term Sheet | |
|---|---|
| **Term** | **Description** |
| | Family does not provide a mutual release of claims to the Debtors and Ranches Committee, Farms Committee, Tyson, and Segale (the "Debtor Exculpated Parties"), and such Easterday Family member or affiliate prosecutes a proof of claim against the Debtors or otherwise asserts claims against any of the Debtor Exculpated Parties relating in any way to the Debtors or their properties or business, the Debtors and the Debtor Exculpated Parties may assert against that party any claims that otherwise would have been released hereunder. Specific release of those parties with direct contractual agreements with the Easterday Family et al. in connection with Debtors will need to be provided if they are not paid in full. For the avoidance of doubt, specific releases will include (a) a direct release of any and all Tyson and Segale claims, and (b) release of any and all claims by parties in the attached Exhibit A ("Releases"). Further, notwithstanding the proviso above, it shall be a condition precedent to the Effective Date of the Plan that Jody Easterday and each of Cody and Debby Easterday's children (in addition to the Parties hereto) execute such mutual releases with the Debtors and Debtor Exculpated Parties.<br><br>Notwithstanding the foregoing, Tyson and Segale are not required to release their direct claims against Cody Easterday, including, to the extent applicable, community property assets, nor is Cody Easterday releasing any claims, defenses, or counterclaims against them. Moreover, and for the avoidance of doubt, any tax liability arising from the sale of the FRI Sale Properties shall be borne by the Easterday Family.<br><br>Upon the Effective Date of the Plan, the pending litigation against the Easterday Family and related family members and entities in which they own an interest will be dismissed with prejudice, including but not limited to the Allocation Complaint Adversary Proceedings [Adv. Pro No. 21-80050], and the 3E Adversary Proceedings [Adv. Pro No. 21-80057].<br><br>The Releases shall be conditioned upon each Easterday Family member making a certified asset disclosure under penalty of perjury, which shall be provided upon court approval of the Term Sheet and updated as of the Effective Date of the Plan. In the event there is a material omission, the Releases shall be null and void with respect to the offending Easterday Family member. Further, the Releases will not release any restitution claims relating to any assets or properties acquired or obtained by Cody Easterday after the Effective Date of the Plan, including, if applicable, community property assets. |
| ***CHS Settlement*** | Upon entry of the Term Sheet Order, Easterday Family shall withdraw their objections to the CHS Settlement and permit the entry of an order approving the settlement. |
| ***Washington Trust Settlement*** | Upon entry of the Term Sheet Order, the Debtors shall amend their settlement with Washington Trust to eliminate any deficiency claims and provide full releases, including the Easterday Family and its Representatives.<br><br>On condition of the foregoing, Easterday Family agrees to withdraw any objection to the Washington Trust Settlement and permit the entry of an order approving the settlement, in form and substance reasonably acceptable to the Easterday Family, which shall provide for the immediate payoff of Washington Trust and consent to the release of such funds from the Escrow Account. |

| Global Settlement Term Sheet | |
|---|---|
| **Term** | **Description** |
| ***TRO Resolution*** | Upon entry of the Term Sheet Order, the Debtors and the Easterday Family shall file an agreed upon stipulated order in the TRO adversary proceeding in form and substance acceptable to the Easterday Family ("Abeyance and Suspense Order") instituting an immediate abeyance and suspense of the effect of (1) Amendment No. 2 to the Farms partnership agreement, which shall also have the effect of recognizing R. Todd Neilson, Craig Barbarosh, and Thomas Saunders V as the directors of Farms and holding in abeyance and suspense the designation of Eric Bonnett as Manager, and Clyde Hamstreet, Hamstreet & Associates as CEO of Farms during the Abeyance and Suspense Period; and (2) the Unanimous Consent of Shareholders of Ranches dated March 12, 2022, which shall have the effect of recognizing R. Todd Neilson, Craig Barbarosh, and Thomas Saunders V as the directors of Ranches and holding in abeyance and suspense the designation of Mark Calvert, Matt McKinlay, and Stephen Benson as the directors of Ranches during the Abeyance and Suspense Period. For the avoidance of doubt, the Abeyance and Suspense Order shall (1) confirm that R. Todd Neilson, Craig Barbarosh, and Thomas Saunders V are the sole acting directors of Farms and Ranches during the Abeyance and Suspense Period with the sole authority to act on behalf of the Debtors, subject to any limitations contained in paragraph 1(a) of the *Scheduling and Abatement Order* [Adv. Pro. 22-8808], as may be amended, and (2) deem the Replacement Directors and Officers (defined below) ***not*** to be directors or officers of the Debtors under Washington law, for any purpose, during the Abeyance and Suspense Period (defined below).<br><br>The agreed form of the Abeyance and Suspense Order is attached hereto as Exhibit D.<br><br>Eric Bonnett as Manager, and Clyde Hamstreet, Hamstreet & Associates as CEO of Farms, and Mark Calvert, Matt McKinlay, and Stephen Benson shall be referred to collectively as the "Replacement Directors and Officers."<br><br>Upon the Effective Date of the Plan, the TRO adversary proceeding shall be dismissed. The period of time from the entry of the Abeyance and Suspense Order through the Effective Date of the Plan or as terminated per the provisions set forth below, shall be referred to as the "Abeyance and Suspense Period."<br><br>If at any time during the Abeyance and Suspense Period, the Easterday Family believes that the Debtors are not proceeding consistent with the terms and intent of this Term Sheet, the agreed consensual Plan and Disclosure Statement, or are otherwise not acting in good faith, the Easterday Family shall give the Debtors notice, which notice shall include a description of the issues, and seven (7) calendar days to cure, during which time the Easterday Family shall meet and confer with the Debtors and attempt in good faith to resolve such disagreement. In the event the Easterday Family and Debtors are unable to resolve their dispute, then in accordance with the terms of the Abeyance and Suspense Order, the Abeyance and Suspense Period shall automatically terminate and all Parties and actions shall be restored to the status quo ante immediately prior to the entry of the Abeyance and Suspense Order; and the Replacement Directors and Officers shall automatically, without further action by the Easterday Family, be reinstated in accordance with Amendment No. 2 to the Farms partnership agreement and the Unanimous Consent of Shareholders of Ranches dated March 12, 2022, which will automatically be reinstated; *provided that* the Debtors shall not take any action during the Abeyance and Suspense Period that would impact reimposition of the status quo ante including but not limited to seeking the prior enjoinment of such actions; *provided further for the avoidance of doubt*, in the event the Abeyance and Suspense Order terminates prior to the Effective Date of the Plan, Adv. Pro. No. 22-80008 shall automatically be reactivated and all prior orders and rulings reinstituted with the court |

| **Global Settlement Term Sheet** | |
|---|---|
| **Term** | **Description** |
| | to reset the preliminary injunction hearing for a date approximately 3 weeks after termination of the Abeyance and Suspense Period or as otherwise agreed by the Parties or ordered by the court. No discovery or other activity related to Adv. Pro. No. 22-80008 shall occur during the Abeyance and Suspense Period. |
| ***Fee Examiner Motion*** | Upon entry of the Term Sheet Order, Debby Easterday shall withdraw her *Motion for Appointment of Fee Examiner* [Docket Nos. 1481 and 1482] without prejudice. |
| ***Fee Waiver*** | No Party, including the Easterday Family and any of its affiliates and family members, shall oppose or otherwise object to the fees and expenses of (i) the estates' professionals (*i.e.*, counsel and financial advisors to the Debtors or Committees, as applicable), (ii) the Co-Chief Restructuring Officers and Paladin Management Group (including any indemnity claims), and (iii) the Replacement Directors and Officers; *provided*, *however*, the allowed fees and expenses of the Replacement Directors and Officers shall be $50,000 ($10,000 each to the five Replacement Directors and Officers), *provided further, however*, in the event the Abeyance and Suspense Period expires or is terminated prior to the Effective Date of the Plan, the Replacement Directors shall be entitled to additional compensation. |
| ***Statements Concerning Paladin Management Group*** | The confirmation order shall be in form and substance reasonably acceptable to the Parties ("Confirmation Order") and shall provide that the pleadings filed by the Easterday Family and Lindy Widner in the TRO adversary proceeding and the statements of Karen Easterday in her status conference statements [Docket No. 1472 and 1473] and disclosure statement objections [1470] are deemed withdrawn with prejudice once the Confirmation Order is "Final". "Final" means that the Confirmation Order has been entered on the docket by the clerk of the bankruptcy court and has not been appealed, reversed, stayed, modified, or amended, and as to which the time for filing a notice of appeal, or petition for certiorari or request for certiorari, or request for rehearing, shall have expired and the Confirmation Order is no longer subject to appeal, remand, retrial, modification, or further proceedings of any kind or nature.<br><br>The Disclosure Statement shall contain an acknowledgement of Paladin Management Group's significant contributions to these Chapter 11 Cases and the global settlement contained therein. |
| ***Effective Date*** | The "Effective Date" of the settlement contained herein and Releases shall be the effective date of the Plan; *provided*, *however*, the Debtors shall take any and all action necessary to reimpose the stay as described in the Cooperation Agreement in the event any party providing releases under this Settlement Agreement seeks to pursue the Easterday Family. |
| ***Easterday Family Plan Support*** | Neither the Easterday Family nor any of their affiliates or family members (other than Weyns Farms and its related entities) shall oppose or otherwise object to the Plan, provided it conforms to the terms of this Term Sheet.<br><br>The Plan shall conform to the terms of and shall be consistent in all respects with the terms contained in this Term Sheet. For the avoidance of doubt, the Second Amended Plan [Docket No. 1383] shall be materially altered to incorporate the terms of this Term Sheet and the global settlement set forth herein.<br><br>Additionally, the Debtors shall include in the Disclosure Statement (as an exhibit) the Easterday Family Contributions Memo attached hereto as Exhibit B by stating: "Attached |

| Global Settlement Term Sheet | |
|---|---|
| **Term** | **Description** |
| | hereto as Exhibit _ is a statement prepared by the Easterday Family describing some of their contributions to these cases. **EXHIBIT _ WAS PREPARED BY THE EASTERDAY FAMILY. THE DEBTORS ARE NOT RESPONSIBLE FOR, NOR DO THE DEBTORS TAKE ANY POSITION WITH RESPECT TO, THE STATEMENTS MADE BY THE EASTERDAY FAMILY IN EXHIBIT _.**" The Debtors shall include in the Disclosure Statement (as an exhibit) the Description of Potential Claims Against the Easterday Family attached hereto as Exhibit C. The Parties shall not make any contrary statements in these chapter 11 cases regarding the Easterday Family's contributions, the memo, or potential claims against the Easterdays without the consent of the Easterday Family. |
| ***Non-Easterday Family Plan Support*** | The Farms Committee and Ranches Committee shall include letters in support of the Plan in the solicitation materials and shall use their best efforts to take all actions necessary and appropriate to confirm the Plan.<br><br>Tyson and Segale shall vote in favor of the Plan, provided it conforms to the terms of the Term Sheet. |
| ***Plan Treatment*** | The Second Amended Plan [Docket No. 1383] shall be modified to incorporate the terms of the Term Sheet. The waterfall under the Plan will incorporate the settlement among the Ranches Committee, Segale, and Tyson as set forth in the Second Amended Plan (except as otherwise agreed to among the Ranches Committee, Segale, and Tyson).<br><br>For the avoidance of doubt, Segale shall have an allowed Class 8 Claim in the amount of $7,830,641.27 and Tyson shall have an allowed Class 7 Claim in the amount of $261,316,000.00.<br><br>The Plan shall provide for payment in full of Allowed Class 5 Claims (Farms General Unsecured Claims) (excluding postpetition interest); *provided*, *however*, it shall be a condition precedent to the Effective Date that the aggregate Allowed Class 5 Claims shall not exceed $18.5 million, which condition may be waived with the unanimous consent of Tyson, Segale, and the Ranches Committee; *provided further* that such condition must be satisfied or waived by June 30, 2022.<br><br>Distributions to holders of Allowed Class 5 Claims shall be paid on the Effective Date of the Plan. As a result, holders of Allowed Class 5 Claims shall not receive a beneficial interest in the Liquidation Trust or any oversight authority.<br><br>The Effective Date of the Plan shall be no later than July 31, 2022. |
| ***Standstill*** | Upon ***execution*** of this Term Sheet, the Debtors and the Easterday Family shall file an agreed upon stipulated order in the main chapter 11 case and each adversary proceeding that provides that no Party or Representatives shall take any actions directly or indirectly adverse to another Party or Representative from now through the earlier of the Effective Date of the Plan or the Abeyance and Suspense Period is terminated (the "Standstill Period") in the main cases or in any pending or threatened adversary proceedings or contested matters, including the filing of any new proceedings or issuance of any document requests or Rule 2004 motions to any other Party (including any entity affiliated with the Easterdays); *provided that*, the Parties may continue their efforts to file and prosecute a consensual plan of liquidation in accordance with the terms hereof. For the avoidance of |

| Global Settlement Term Sheet | |
|---|---|
| **Term** | **Description** |
| | doubt, all activity in all pending adversary proceedings or contested matters, other than efforts to settle or resolve any pending adversary proceeding or contested matter, shall immediately cease and be held in abeyance and any and all pending deadlines and dates in any adversary proceeding or contested matter are tolled, including, but not limited to, activities or discovery involving third parties, pending meet-and-confer conferences, depositions, discovery deadlines, and trial and related pre-trial dates and deadlines.<br><br>The agreed form of the standstill orders for the main chapter 11 case, Allocation Complaint Adversary Proceeding [Adv. Pro No. 21-80050], and the 3E Adversary Proceeding [Adv. Pro No. 21-80057], are attached hereto as Exhibits E-1, E-2, and E-3, respectively. |
| ***Jurisdiction*** | The Bankruptcy Court shall have exclusive jurisdiction to resolve any disputes arising from or related to this Term Sheet. |
| ***Governing Law*** | Washington law will govern except to the extent the Bankruptcy Code is applicable. |

**EASTERDAY RANCHES, INC.**

By: /s/ Thomas A. Buford

Armand J. Kornfeld (WSBA #17214)
jkornfeld@bskd.com
Thomas A. Buford (WSBA #52969)
tbuford@bskd.com
Richard B. Keeton (WSBA #51537)
rkeeton@bskd.com
BUSH KORNFELD LLP
601 Union Street, Suite 5000
Seattle, WA 98101

Richard M. Pachulski, *Admitted Pro Hac Vice*
rpachulski@pszjlaw.com
Jeffrey W. Dulberg, *Admitted Pro Hac Vice*
jdulberg@pszjlaw.com
Jason H. Rosell, *Admitted Pro Hac Vice*
jrosell@pszjlaw.com
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003

**EASTERDAY FARMS**

By: /s/ Thomas A. Buford

Armand J. Kornfeld (WSBA #17214)
jkornfeld@bskd.com
Thomas A. Buford (WSBA #52969)
tbuford@bskd.com
Richard B. Keeton (WSBA #51537)
rkeeton@bskd.com
BUSH KORNFELD LLP
601 Union Street, Suite 5000
Seattle, WA 98101

Richard M. Pachulski, *Admitted Pro Hac Vice*
rpachulski@pszjlaw.com
Jeffrey W. Dulberg, *Admitted Pro Hac Vice*
jdulberg@pszjlaw.com
Jason H. Rosell, *Admitted Pro Hac Vice*
jrosell@pszjlaw.com
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF EASTERDAY RANCHES, INC.**

By: /s/ Christopher B. Durbin

Christopher B. Durbin (WSBA #41159)
cdurbin@cooley.com
COOLEY LLP
1700 Seventh Avenue, Suite 1900
Seattle, WA 98101

Cullen D. Speckhart, *Admitted Pro Hac Vice*
*cspeckhart@cooley.com*
Michael Klein, *Admitted Pro Hac Vice*
*mklein@cooley.com*
COOLEY LLP
5 Hudson Yards
New York, NY 10001

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF EASTERDAY FARMS**

By: /s/ Julian I. Gurule

Joseph M. Welch (WSBA #56521)
Julian I. Gurule (admitted *pro hac vice*)
BUCHALTER
1420 Fifth Avenue, Suite 3100
Seattle, WA 98101

**Signatures continued on next page**

**KAREN L. EASTERDAY, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF GALE A. EASTERDAY**

By: */s/* Timothy J. Conway
Timothy J. Conway, WSBA 52204
tim.conway@tonkon.com
Ava L. Schoen, *Admitted Pro Hac Vice*
ava.schoen@tonkon.com
TONKON TORP LLP
888 SW Fifth Avenue, Suite 1600
Portland, OR 97204-2099

**CODY EASTERDAY AND DEBBY EASTERDAY**

By: */s/* Jeffrey C. Misley
Jeffrey C. Misley, WSBA #33397
jmisley@sussmanshank.com
Thomas W. Stilley, WSBA #21718
tstilley@sussmanshank.com
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, OR 97205-3089

**EASTERDAY DAIRY, LLC**

By: */s/* Russell D. Garrett
Russell D. Garrett (WSBA 18657)
Russell.garrett@jordanramis.com
Daniel L. Steinberg (WSBA 30080)
Daniel.steinberg@jordanramis.com
JORDAN RAMIS PC
1499 SE Tech Center Place, #380
Vancouver, WA 98683

**3E PROPERTIES AND EASTERDAY FARMS PRODUCE, CO.**

By: */s/* Michelle A. Green
Michelle A. Green, WSBA 33397
michelle@ggw-law.com
GATENS GREEN WEIDENBACH, PLLC
305 Aplets Way
Cashmere, WA 98815

**TYSON FRESH MEATS, INC.**

By: */s/* Bradley A. Cosman
Alan D. Smith (WSBA 24964)
ADSmith@perkinscoie.com
Bradley A. Cosman (*pro hac vice*)
BCosman@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue
Seattle, WA 98101

**SEGALE PROPERTIES LLC**

By: */s/* John R. Rizzardi
Aditi Paranjpye (WSBA # 53001)
aparanjpye@cairncross.com
John R. Rizzardi (WSBA # 9388)
jrizzardi@cairncross.com
Jennifer K. Faubion (WSBA # 39880)
jfaubion@cairncross.com
CAIRNCROSS & HEMPELMANN, P.S.
524 Second Avenue, Suite 500
Seattle, WA 98104-2323